Heffernan, J.
Mary Cramer Johnston, a resident of Albany County, was adjudged an incompetent person in August, 1928, and remained such until her death on November 4,1948. A committee of her person and property was appointed by the Supreme Court.
She left a last will and testament which was admitted to probate by the Surrogate of Albany County on March 4, 1949, and appellant was duly appointed administrator c. t. a. of her estate.
On October 20, 1949, the Surrogate, on his own motion, made an order directing the administrator to file an intermediate account of his acts and proceedings on or before November 21, 1949. The account was filed on November 20, 1949. It consists of a number of schedules labeled A to I inclusive. The latter schedule, which is the only one requiring any examination, has to do solely with the annual inventories and accounts filed in the Supreme Court by the incompetent’s committee, twenty annual intermediate accountings in that court and the proceedings and decrees of the Supreme Court in connection with such accountings, together with the final accounting of the committee in the Supreme Court in March, 1949.
The order of October 20, 1949, simply directed the filing of an intermediate account. It made no provision for making the persons interested in the decedent’s estate parties to the proceeding and consequently no objections have been made or filed to any item or items in the administrator’s account.
On December 1, 1949, the Surrogate, on his own motion, appointed a referee “ to inquire and examine into, take and report to the Surrogate with all convenient speed upon all questions of law and facts referred to and contained in the Intermediate Accounts so filed ” and also directed the administratoi to appear before the Referee and submit to examination under oath. The accounts to which the Surrogate referred are those specified in Schedule I which were rendered to and judicially approved by the Supreme Court.
The administrator appeared before the Referee on December 20, 1949. After taking his testimony the Referee adjourned the proceeding.
Subsequently the Referee presented a petition to the court, which does not appear in the record, in which he sought authori *120 zation to employ a certified public accountant to examine the intermediate and final accounts of the committee in the incompetency proceedings referred to in Schedule I. The appellant opposed the application. There can be no doubt that those are the records which the Referee desired to examine because the Surrogate in granting the request said: “ The referee has informed the court that he is not ready to report to the Surrogate on the matters referred to him, and can not make such report until he is given the opportunity to secure the services of a certified public accountant in order that he may make an investigation of the transactions and matters referred to in Schedule I of the account of the administrator c. t. a.”
Thereafter appellant petitioned the Surrogate to vacate the order of reference on the ground that the intermediate and final decrees of the Supreme Court are res judicata as to all matters contained therein. The Referee appeared in opposition to this application and the court denied it by an order dated February 20,1950. From that order appellant has come to this court.
Under section 253 of the Surrogate’s Court Act the power is vested , in the Surrogate to direct the administrator to file an intermediate account of his proceedings in this estate. The Surrogate is clothed with very broad powers respecting all matters over which he has jurisdiction. In a proper case he may appoint a referee. His powers, however, are not without limitation. Section 66 of the Surrogate’s Court Act grants to the Surrogate a broad discretionary power to appoint a referee in special proceedings, including accountings. The general power is specifically limited by the following provisions in the same section: “No referee to examine an account rendered, whether intefmetjiate or final, or to hear and report all questions arising upon the settlement of such an account shall be appointed where the estate or fund does not exceed one thousand dollars in value nor in any case where the item or items in such account to which objections have been made do not aggregate more than two hundred dollars.” (Italics supplied.)
As we have previously shown no objections have been made to any item or items in the account which the administrator filed. Not only have no objections been made but no one who might be entitled to object has been made a party to the proceeding or been given notice of the filing of the account. Under such circumstances the Surrogate had no authority to appoint a referee. There is an equally compelling reason why the order appealed from must be stricken down. The committee of an incompetent person may render to the court which appointed *121 him intermediate accounts of his stewardship and have the same judicially settled and allowed (Civ. Prac. Act, § 1381) and upon the death of the incompetent he must render to the same court a final account of his proceedings (Civ. Prac. Act, § 1383).
The intermediate and final accounts which the committee rendered to the Supreme Court and which have been judicially settled by that tribunal are final, conclusive and binding on the Surrogate. He has no jurisdiction or authority, either directly or through the intervention of a referee, to examine or inquire into those accounts. To sanction the appointment of a referee and a certified public accountant in this case would subject this estate to unwarranted and useless expense. If there are any errors, mistakes or omissions in the accounts of the committee or any fraud or wrongdoing in connection therewith or any liability of the committee to the incompetent’s estate, the administrator has ample authority to apply to the Supreme Court to open up the decrees in order that the court may make whatever determination justice and equity may require. The door of the Supreme Court is always open for that purpose.
The order appealed from should be reversed on the law and facts, without costs.
Foster, P. J., and Brewster, J., concur; Deyo and Bergan, JJ., concur in conclusion with following memorandum: We concur in the conclusion that the Surrogate could not appoint a referee on the record before him, but the absence of this power to refer, which is the only question here, does not impose any limitation upon the power which the Surrogate clearly has to inquire into the effect upon the value of the estate of the decedent of the proceedings taken in the Supreme Court, while she was incompetent. The Surrogate has the power to direct the administrator to apply to the Supreme Court to open up such proceedings if he is of opinion from the evidence before him that irregularity in those proceedings has adversely affected the value of the decedent’s estate. Res judicata is no answer to a direct attack on the regularity of the accounts by an administrator who shows the estate he administers is affected.
Order appealed from reversed, on the law and facts, without costs.